IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **CORY McDONALD, AND ALL OTHERS SIMILARLY SITUATED UNDER 29 USC 216(b),**<br>    *Plaintiff*,<br>                    v.<br><br>**GORE NITROGEN PUMPING SERVICE, LLC and GARY GORE,**<br><br>    *Defendants*. | **Civil Action No. 5:18-cv-01010-G** |

**FIRST AMENDED COLLECTIVE ACTION COMPLAINT**

Plaintiff Cory McDonald brings this action individually and on behalf of those similarly situated, and in support shows the Court the following:

**I.      SUMMARY**

1.      This is an opt-in collective action brought pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, et seq., ("FLSA").

2.      Defendants operate an oilfield services business specializing in providing nitrogen pumping, fracturing and transportation services ("Oilfield Services") to its clients throughout Oklahoma, Texas, Kansas, Arkansas, and Eastern Colorado.[1]

3.      Defendants employ non-supervisory "Field Employees" to perform the manual and technical labor to provide the very services Defendant offers as the primary output to their oilfield production customers—the delivery and operation of oilfield equipment at well sites.

4.      Non-supervisory Field Employees' primary duty specifically consists of performing routine oilfield services, including the transportation, loading, unloading, rigging up, rigging down,

---

[1] See http://www.goren2.com/ (last visited November 15, 2018).

and operation of oilfield equipment ("Oilfield Work") to provide Defendant's oilfield services to customers at well-sites.[2]

5. Defendant misclassified non-supervisory Field Employees as exempt from overtime, paid them on a salary basis and refused to pay them overtime despite regularly working over 40 hours per workweek ("OT Misclassification Policy").

## II.    PARTIES

6. Plaintiff incorporates by reference all allegations previously made in this Complaint.

7. Plaintiff worked for Defendants as a non-supervisory Field Employee within the last two years of this filing. Defendant referred to Plaintiff's specific job title in multiple ways during his employment, including referring to his position as "Fracturing Specialist" and "Frac Hand" during his employment. He has already filed his consent to participate in this action with the Court. ECF 1-1.[3]

8. The similarly situated "FLSA Class Members" consist of Defendants' current and former non-supervisory Field Employees (1) who received pay on a salary basis; (2) whose job duties included Oilfield Work[4] or similar job duties; and (3) who worked over 40 hours in at least one

---

[2] Robinson v. RWLS, LLC, No. SA-16-CA-00201-OLG, 2017 WL 1535073, at *6 (W.D. Tex. Jan. 11, 2017), report and recommendation adopted, No. SA-16-CV-201-OLG, 2017 WL 1536065 (W.D. Tex. Feb. 6, 2017) (granting conditional certification to all field personnel, including but not limited to riggers, operators, engineers in training, and engineers, employed by Defendants from September 2013 to the present who were paid on a salary-plus-job bonus basis.").

[3] This consent form sufficiently provides Plaintiff's intent and consent to participate in this action as party plaintiff. Judd v. KeyPoint Gov't Sols., Inc., No. 18-CV-00327-RM-STV, 2018 WL 3057880, at *3 (D. Colo. June 20, 2018) ("[C]ourts have generally not taken a strict approach with regard to the *form* of the written consent, at least with respect to named plaintiffs .... [A]ll that is required is a signed statement indicating the plaintiff's intent, and consent, to participate as a plaintiff in the collective action.") (quoting Mendez v. The Radec Corp., 260 F.R.D. 38, 52 (W.D.N.Y. 2009); See also Judd, at *4 ("The Court declines to read the consent requirements of Sections 216 and 256 so strictly as to require that a plaintiff explicitly state 'I consent' or 'I am the named Plaintiff' in order to join a collective action under the FLSA. Rather, a signed declaration that manifests a clear intent to be a party plaintiff is sufficient ....") (quoting Faust v. Comcast Cable Commc'ns Mgmt., LLC, No. WMN–10–2336, 2013 WL 5587291, at *3 (D. Md. Oct. 9, 2013). A consent signed by Plaintiff and filed with a collective action complaint in which he is the sole named plaintiff is more than sufficient.

[4] See ¶4 (defining "Oilfield Work").

**FIRST AMENDED COLLECTIVE ACTION COMPLAINT**                                                        Page - 2

workweek over the past three years without receiving overtime pay.[5] The FLSA Class Members include, without limitation, individuals that worked under the job titles of "Frac Hand," "Pump Hand," "Fracturing Specialist," "Nitrogen Pumping Specialist," "Fluid Pump Operator," "Nitrogen Operator," "Equipment Operator," "Treatment Analyst," and other non-supervisory job titles performing similar work that include the term "Specialist," "Hand" or "Operator" in the job title that Defendants subjected to their OT Misclassification Policy.[6]

9. Gore Nitrogen Service, LLC ("Gore Nitrogen") is an Oklahoma limited liability company that has already been served and appeared in this lawsuit.

10. Gary Gore is a natural person that has already been served and appeared in this lawsuit.

### III.   JURISDICTION AND VENUE

11. This Court has jurisdiction over Plaintiffs' FLSA claim because this involves a federal question under the FLSA. 29 U.S.C. § 216(b); 28 U.S.C. § 1331.

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the events forming the basis of the suit occurred in this District and because one or more of the Parties resides in this District.

---

[5] Thomas v. HCC–High Capacity Coil, LLC, No. 2:14–cv–17, 2014 WL 4063981, at *1 (S.D. Tex. July 29, 2014), report and recommendation adopted, 2:14–CV–00017, 2014 WL 4072136 (S.D.Tex. Aug.15, 2014) (granting conditional certification to all "non-managerial field personnel" at coil tubing company); Tolentino v. C & J Spec–Rent Services Inc., 716 F.Supp.2d 642, 652 (S.D.Tex.2010) (granting conditional certification of all Operators at coil-tubing oilfield services company, omitting Supervisors); Thompson v. Peak Energy Servs. USA, Inc., No. 2:13–cv–00266, 2013 WL 5511319, at *1 (W.D. Pa. Oct. 4, 2013) (granting conditional certification of "all solids control technicians," where plaintiff had requested certification of all "Day Rate Employees ... including but not limited to Solids Control Technicians, Rental Coordinators, Service Quality Coordinators, Training Coordinators, and those in similarly titled positions).

[6] Deakin v. Magellan Health, Inc., No. 17-CV-0773-WJ-KK, 2018 WL 4854637, at *3 (D.N.M. Oct. 5, 2018) (granting conditional certification to Defendant's "non-supervisory employees who worked for Defendants in at least one workweek for over 40 hours in one workweek over the past three years; who received their pay on a salary basis; worked under a job title …containing the terms term[sic] "Care Coordinator" or "Care Manager"; and whose job duties included Care Management Work.").

13. Venue is also proper in this District because both of the Defendants reside in this District. 28 U.S.C. § 1391(b)(1).

## IV.   COVERAGE

14. At all times hereinafter mentioned, Defendants have acted, directly or indirectly, in the interest of an employer or joint employer with respect to Plaintiffs and the respective Class Members.

15. At all times hereinafter mentioned, Defendants have been employers or joint employers within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d) and the NMMWA.

16. At all times hereinafter mentioned, Defendants have been an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

17. At all times hereinafter mentioned, Defendants have been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated). Plaintiff and the Class Members specifically handled materials, including oilfield equipment and tools to perform the manual and technical labor necessary to provide Defendant's oilfield services and product to customers at well sites.

18. At all times hereinafter mentioned, Plaintiffs and the respective Class Members were individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. § 203(e)(1).

## V.   FACTUAL ALLEGATIONS

19. Plaintiffs incorporate by reference all allegations previously made in this Complaint.

20. Defendants have had business operations throughout the United States, including in Oklahoma and this Judicial District, throughout the last three years. Their annual gross volume of sales made and business done exceeded $500,000.00 per year at all relevant times.

21. Gary Gore is the owner, manager, and managing member of Gore Nitrogen. Mr. Gore has joint employer liability based on his exertion of operational control over Gore Nitrogen. The operational control he exerted and continues to exert includes making hiring and firing decisions, establishing pay rates, determining methods of payment and compensation policies and practices, and controlling/establishing company rules for Gore Nitrogen. Additionally, Mr. Gore has responsibility for the specific FLSA violations at issue. Specifically, Mr. Gore: (1) implemented and enforced the OT Misclassification Policy; (2) instructed Plaintiff and the Class Members that they did not have to clock-in when they reported for work; (3) failed to keep proper employment records for Plaintiff and the Class Members; and (4) failed to keep any proper time records for the hours worked by Plaintiff and the Class Members during their employment.

22. Plaintiff worked as a non-supervisory Field Employee from approximately January 2018 to July 2018.

23. As a non-supervisory Field Employee, Plaintiff's job duties included Oilfield Work, including transporting, loading, unloading, rigging up, rigging down, and operating oilfield equipment at well sites for Defendant's customers.

24. As a non-supervisory Field Employee, Plaintiff performed the manual and technical labor to provide the very services that Defendant offers as the primary output to their customers—the delivery and operation of oilfield equipment to customers at well sites.

25. As a non-supervisory Field Employee, Plaintiff's job duties involved the use of well-established techniques, procedures, and/or specific standards.

26. As a non-supervisory Field Employee, Plaintiff's job duties did not involve customarily or regularly directing the work of at least two or more employees.

27. As a non-supervisory Field Employee, Plaintiff did not have the authority to hire or fire other employees.

28. Defendants did not pay Plaintiff overtime pay for all hours worked over 40 hours per workweek.

29. Instead of providing Plaintiff with overtime pay, Defendants paid Plaintiff pursuant to the OT Misclassification Policy that classified him as exempt and paid him on a salary with no overtime pay for his many hours of overtime work.

30. Defendants knew that Plaintiffs worked in excess of 80 hours per week.

31. Plaintiff is entitled to receive overtime pay for all the hours they worked in excess of 40 per workweek.

32. As non-supervisory Field Employees, the FLSA Class Members' job duties included Oilfield Work, including transporting, loading, unloading, rigging up, rigging down, and operating oilfield equipment at well sites for Defendant's customers.

33. As non-supervisory Field Employees, the FLSA Class Members performed the manual and technical labor to provide the very services that Defendant offers as the primary output to their customers—the delivery and operation of oilfield equipment to customers at well sites.

34. As non-supervisory Field Employees, the FLSA Class Members' job duties involved the use of well-established techniques, procedures, and/or specific standards.

35. As non-supervisory Field Employees, the FLSA Class Members' job duties did not involve customarily or regularly directing the work of at least two or more employees.

36. As non-supervisory Field Employees, the FLSA Class Members did not have the authority to hire or fire other employees.

37. Defendants did not pay the FLSA Class Members overtime pay for all hours worked over 40 hours per workweek.

38. Instead of providing the FLSA Class Members with overtime pay, Defendants paid the FLSA Class Members pursuant to the OT Misclassification Policy that classified them as exempt and paid them a salary with no overtime pay for their many hours of overtime work.

39. Defendants knew that the FLSA Class Members worked in excess of 80 hours per week.

40. The FLSA Class Members are entitled to receive overtime pay for all the hours they worked in excess of 40 per workweek.

41. Defendants willfully misclassified Plaintiff and the FLSA Class Members as exempt and refused to pay them overtime pay, despite (1) having awareness of the FLSA's minimum wage and overtime requirements; (2) routinely receiving complaints from Plaintiff and the FLSA Class Members regarding their pay and not being paid for overtime hours; and (3) paying workers who performed substantially similar, nonexempt duties on an hourly/overtime eligible basis, but choosing not to pay Plaintiffs and the FLSA Class Members overtime in compliance with federal law.

## VI.   COLLECTIVE AND CLASS ALLEGATIONS

42. Plaintiff and the FLSA Class Members shared the same or similar non-exempt job duties as one another because they performed Oilfield Work or similar non-exempt job duties. Plaintiff and the Class Members all were subjected to the same illegal OT Misclassification Policy that misclassified them as exempt from overtime, paid them on a salary basis and denied them overtime for hours worked in excess of 40 hours per workweek. Accordingly, the Plaintiff and the Class Members are similarly situated to one another in regards to their job duties and pay provisions.

43. Defendants' failure to pay overtime compensation at the rates required by the FLSA results from generally applicable policies or practices and do not depend on the personal circumstances

of the FLSA Class Members. Thus, Plaintiff's experience is typical of the experience of the FLSA Class Members. All FLSA Class Members, regardless of their precise job requirements or rates of pay, are entitled to overtime compensation for hours worked in excess of 40 hours per week. Although the issue of damages may be individual in character, there is no detraction from the common nucleus of liability facts. The questions of law and fact are common to Plaintiff and the FLSA Class Members.

44. Defendants knowingly, willfully or with reckless disregard carried out their illegal pattern or practice of failing to pay overtime and minimum compensation with respect to Plaintiff and the Class Members.

## VII. CAUSE OF ACTION: FAILURE TO PAY WAGES IN ACCORDANCE WITH THE FAIR LABOR STANDARDS ACT

45. Plaintiff incorporates all allegations previously made in this Complaint.

46. During the relevant period, Defendants violated and continue to violate the provisions of Sections 6 and 7 of the FLSA, 29 U.S.C. §§ 206-7, and 215(a)(2), by employing employees in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA as aforesaid, for workweeks longer than 40 hours without compensating such employees for their work in excess of forty hours per week at rates no less than one-and-a-half times the regular rates for which they were employed.

47. Defendants acted willfully in failing to pay Plaintiff and the FLSA Class Members in accordance with the law.

## VIII. RELIEF SOUGHT

48. WHEREFORE, cause having been shown, Plaintiff prays for judgment against Defendants as follows:

a. For an Order pursuant to Section 16(b) of the FLSA finding Defendants liable for unpaid back wages due to Plaintiff (and those who may join in the suit) and for liquidated damages

equal in amount to the unpaid compensation found due to Plaintiff (and those who may join the suit); and

      b.      For an Order awarding Plaintiff (and those who may join in the suit) the costs of this action;

      c.      For an Order awarding Plaintiff (and those who may join in the suit) attorneys' fees;

      d.      For and Order awarding Plaintiff (and those who may join in the suit) pre-judgment and post-judgment interest at the highest rates allowed by law; and

      e.      For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

*/s/ Travis M. Hedgpeth*
**Travis M. Hedgpeth**
Texas Bar # 24074386
**THE HEDGPETH LAW FIRM, PC**
5438 Rutherglenn Drive
Houston, Texas 77096
Telephone: (512) 417-5716
travis@hedgpethlaw.com

Steven T. Horton, OBA No. 14589
HORTON LAW FIRM
114 N.W. 6th Street, Suite 201
Oklahoma City, Oklahoma 73102
Telephone:   405/606-8080
Facsimile:    405/606-8088
E-mail:       shorton@coxinet.net

**ATTORNEYS FOR PLAINTIFFS**

### CERTIFICATE OF SERVICE

I hereby certify that the foregoing was electronically filed and served on all parties of record via the Court's CM/ECF filing system.

                  */s/ Travis M. Hedgpeth*
                  Travis M. Hedgpeth